SOUTHERN EXPRESS COMPANY, v. THE STATE.

1. The act of 1917 (Acts Ex. Sess. 1917, p. 7), amending and supplementing the prohibition laws of this State, authorizes a common carrier to transport and deliver to a practicing physician, who is the sole proprietor of a drug-store, pure alcohol for medicinal purposes, under certain conditions specified in the act, from one point within the State to another point within the State of Georgia.

2. Under the facts of this case it was error to hold that the common carrier was guilty of a misdemeanor for transporting pure alcohol shipped by a wholesale druggist living at a point within this State to a practicing physician living at another point within this State, where it appeared that such physician had an office and kept drugs therein for the purpose of compounding his own medicine, and where such alcohol was to be used for medicinal purposes only, and all the conditions of the act relative to receiving and delivering the alcohol had been complied with by the physician and the common carrier. Nor was it illegal under the act of 1917 for such common carrier, under such circumstances, to have pure alcohol in its possession.

No. 1321.   OCTOBER 16, 1919.

Certiorari; from Court of Appeals. 23 Ga. App. 376.

The Southern Express Company was tried for a misdemeanor under an indictment which contained two counts, the first charging that the defendant "did then and there transport, ship, and carry from Valdosta, Ga., to Camilla, Ga., both being points within this State, spirituous, vinous, malted, fermented, alcoholic, and intoxicating liquors and beverages, the last-named point, to wit, Camilla, Ga., being in the county of Mitchell, and said defendant did so transport, ship, and carry said liquors and beverages in the said county of Mitchell." The second count charged that the Southern Express Company did "unlawfully and with force and arms, in the county aforesaid, have, control, and possess spirituous, alcoholic, and intoxicating liquors." The case was tried by the presiding judge, to whom it was submitted without a jury, on the following agreed statement of facts: "The Southern Express Company was a corporation and common carrier at all times herein mentioned. In April, 1917, said express company received for transportation, from the Mashburn Drug Company, which was at all times herein mentioned a wholesale druggist of Valdosta, Ga., at said Valdosta, Ga., one gallon of pure alcohol, to be transported by said Southern Express Company to Dr. H. G. Fussell at Camilla, Ga., in Mitchell county. Said alcohol was not delivered by said express company to Dr. Fussell, but was seized in the office

of said express company by the sheriff at Camilla, Ga. Dr. Fussell was at all times mentioned herein a practicing physician of Camilla, Ga., but was not a pharmacist or apothecary holding license as such from the State Board of Pharmacy, but kept a stock of drugs and medicines, costing at wholesale from $100.00 to $200.00, in his office at Camilla, Ga., for use in putting up his own prescriptions and dispensing medicines from his own office, and in his practice of his profession as a doctor of medicine; and said alcohol was wanted by him for medicinal purposes in connection with said stock of drugs and medicines. He had ordered the same from the Mashburn Drug Company of Valdosta, Ga., and the Southern Express Company did transport the same for said Dr. Fussell from said Mashburn Drug Company, which was undertaking to fill said order therefor. Camilla and Valdosta are both points within the State of Georgia, and said alcohol was conveyed from Valdosta, Ga., to Camilla, Ga., and into the county of Mitchell, and was in said Southern Express Company's custody at its office in Camilla, in Mitchell county, for the purpose aforesaid, when seized by the sheriff. Subsequently said Fussell applied in due form to the ordinary of Mitchell county, for a permit to receive said alcohol for medicinal purposes, stating in said application that the business or occupation of applicant was that of a physician, said application being supported in due form by the affidavits of said Fussell and a certificate of two citizens of Mitchell county, as required by law, and said application was approved and granted by said ordinary, and said sheriff then delivered said alcohol to said Fussell. All of the above-stated transactions occurred in the month of April, 1917, and prior to April 11, 1917, the date when said special presentment was returned and filed. Neither said defendant nor any agent or officer thereof intended to violate any law in said transaction, or knew that it was a violation of the law to do any of said things, if it was such in fact." The trial judge rendered judgment against the defendant, which excepted, and the case was taken to the Court of Appeals. That court affirmed the judgment, one judge dissenting; and the case was brought to this court on a writ of certiorari.

*Robert C. & Philip H. Alston* and *Herman E. Riddell*, for plaintiff in error.

*R. C. Bell, solicitor-general,* and *F. A. Hooper*, contra.

HILL, J. (After stating the foregoing facts.) The defendant was indicted and tried in the court below under an act of the General Assembly passed at the extraordinary session of March, 1917. The caption of this act is as follows: "An act to amend and supplement the prohibition laws of this State; to make it unlawful to transport, ship, or deliver in this State . . any spirituous, vinous, malt, or fermented liquors, or other intoxicating liquors or beverages, except alcohol and wine under certain restrictions and limitations; to make it unlawful to have, receive, possess, or control any such liquors, except alcohol for medicinal, mechanical, and scientific purposes, and wine for sacramental purposes under conditions prescribed; to make it unlawful to distill, manufacture, or make any alcoholic, spirituous, vinous, or malted liquors or intoxicating beverages in this State; to provide for the punishment of violators of the provisions of this act; to provide for the seizure, condemnation, and sale of property used in violation of this act, and for the disposition of the funds arising from such sale; to provide additional fees and costs in cases of conviction for violation of certain provisions of the prohibition laws of this State; to repeal the acts approved November 18, 1915, and August 19, 1916, and certain portions of the act approved November 17, 1915; and for other purposes." Section 1 of the act provides, so far as applicable to this case, that "it shall be unlawful for any common carrier, corporation, firm or individual to transport, ship, or carry, by any means whatsoever, with or without hire, or cause the same to be done, from any point without this State to any point within this State, or from place to place within this State, whether intended for personal use or otherwise, any spirituous, vinous, malted, fermented, or intoxicating liquors, or any of the prohibited liquors or beverages, as are defined in the act approved November 17, 1915, being 'an act to make clearer and more certain' the prohibition laws of this State, etc., or any alcoholic compound or malt liquors, whether intended for beverage purposes or not, but which can be diluted, and when so diluted may be used as a beverage and will produce intoxication. It shall be unlawful for any corporation, firm, person or individual to receive from any common carrier, corporation, firm, person or individual, or to have, control, or possess, in this State, any of said enumerated liquors, . . save as is hereinafter excepted." Under section 16 of the act it is pro-

vided that any one violating its provisions shall be punished as for a misdemeanor, as provided in § 1065 of the Penal Code of 1910. Section 2 of the act of 1917 provides: "That nothing herein contained shall prohibit the use of pure alcohol for medicinal purposes, as is prescribed in sections 426, 427, 428, 429, and 430 of the Criminal Code of 1910, said alcohol, however, to be shipped, received, and possessed only as is provided in section 3 of this act." Section 3 of said act is as follows: "That any common carrier may transport, ship, or carry from any point without this State to any point within this State, pure alcohol to be received only by any practicing physician who is the sole proprietor of a drug-store, licensed druggists, pharmacists, manufacturers, chartered colleges, chartered hospitals, or State institutions, and to be used only for medicinal, mechanical, and scientific purposes not contravening in any way the prohibition laws of this State, under the following conditions: Any practicing physician who is the sole proprietor of a drug-store, licensed druggist, pharmacist, manufacturer, chartered college, chartered hospital, or State institution, desiring to have shipped and to receive pure alcohol for said purposes within this State, shall make sworn application to the ordinary of the county of his residence for a permit to receive said alcohol, upon the certificate of two responsible citizens of said county as to his good moral character, in the following form:" (Form omitted.)

The question for decision is whether, under the indictment, the agreed state of facts, and the act above mentioned, construed in connection with sections 426 to 430, inclusive, of the Penal Code of 1910, the defendant, Southern Express Company, is guilty of a misdemeanor, and should, on conviction, be punished accordingly. Under the view that we take of this case the defendant has been illegally convicted; and accordingly we think that the Court of Appeals erred in affirming that conviction. It will be seen from a consideration of the act in question that the legislature had one main purpose in view with reference to common carriers, and that was to make it unlawful to transport or deliver, in this State, "any spirituous, vinous, malt, or fermented liquors, or other intoxicating liquors or beverages, except alcohol and wine under certain restrictions and limitations." It will be perceived that pure alcohol was excepted from the operation of the act. It is true that section 3 provides that "any common carrier may trans-

port, ship, or carry from any point without this State to any point within this State pure alcohol to be received only by any practicing physician who is the sole proprietor of a drug-store;" and it is insisted that under the facts of this case the physician to whom the alcohol was delivered, while a practicing physician, was not the sole proprietor of a drug-store, as contemplated by section 3 of the act; that he merely kept a few drugs on hand in his office for the purpose of filling his own prescriptions, and therefore that he did not fall within the definition of those to whom alcohol could be shipped and delivered; and that the common carrier, the express company, violated the provisions of that section of the act when it delivered the alcohol to him. Whether the physician in this case is technically the "sole proprietor of a·drug-store" is immaterial under the facts of this case, inasmuch as the carrier was authorized to deliver the alcohol when it was presented with the application, which had been approved and granted by the ordinary as required by the statute. This had been done. If the common carrier delivers pure alcohol to an individual upon a false or forged application, *knowing the same to be such,* or without such application for delivery having been made, etc., such carrier could be punished as prescribed in section 16 of the act of 1917. See section 11 of the act of 1917. On the other hand, if the carrier should deliver the alcohol without the application being presented to it, or without the application being allowed and approved by the ordinary, or deliver it upon a false or forged application, *knowing it to be such,* the case would be different. See section 11 of the act, supra. Here the application was regularly issued and approved by the ordinary; and this being so, the common carrier would be authorized prima facie to deliver the alcohol without committing any offense under the statute. Section 31 ·of the Penal Code provides that a "crime or misdemeanor shall consist of a violation of a public law, in the commission of which there shall be a union or joint operation of act and intention, or criminal negligence." The agreed statement of facts discloses that the physician to whom the alcohol was shipped made a sworn application to the ordinary of the county of his residence, for permission to receive the alcohol, and that section 3 of the act in this regard was otherwise complied with. When, therefore, this permit of the ordinary was presented to the common carrier "in

due form," approved and granted by the ordinary, nothing else appearing, we do not think that anything in the record would authorize the conclusion that there was an intention on the part of the carrier to violate the act of 1917, or that there was any criminal negligence on its part. The act provides that the application shall be presented to the ordinary in duplicate; and when approved by the ordinary and presented to the common carrier, that will authorize the common carrier to deliver to the applicant the quantity of pure alcohol therein specified. The common carrier is required to endorse on the certificate the date of the delivery and the quantity of alcohol received on the certificate, and the certificate shall then cease to be authority for the delivery of any further alcohol. No contention is made that these provisions of the act were not complied with in good faith; and that being true, we think the defendant was authorized to deliver the alcohol to the applicant. Under the decision of the Court of Appeals it was unlawful for the carrier to have the alcohol in its possession; but we can not agree to this conclusion.

It is argued that the act authorizes pure alcohol to be shipped from a point in another State to a wholesale druggist in this State, but that no shipment of pure alcohol can be made from such wholesale druggist within this State to a retail druggist within the State. The evident purpose of the legislature was to prohibit the use of alcoholic liquors, etc., for beverage purposes; but it is just as evident that the legislature intended to allow the use of pure alcohol for medicinal purposes. It would be strange indeed, and inconsistent, to impute to the legislature the purpose of permitting pure alcohol to be shipped to wholesale druggists within this State, and yet deny to retail druggists the right to have shipped to them pure alcohol from such wholesale druggist. It can not be said that the legislature permitted the transportation and shipment of alcohol from other States into this State because of the fact that that was an interstate shipment and therefore it had no power or authority to prevent such shipment. It will be called to mind that the act of 1917 was passed subsequently to what is known as the Webb-Kenyon act of Congress of March 1, 1913 (c. 90, 37 Stat. 699, U. S. Comp. St. § 8739), under which the legislatures of the different States could prohibit the shipment from points without the State to points within the State, notwithstand-

ing its interstate character. Therefore the legislature, knowing this fact, certainly did not mean to authorize interstate shipment solely for the reason that they had no authority to prohibit it; but on the contrary a reading of the entire act of 1917 will clearly show the purpose and intention of the legislature to except from the operation of the act pure alcohol, whether shipped from points without to points within, or from points within the State to other points within the State. If it be said that the common carrier could ship and deliver only to a physician who is the sole proprietor of a drug-store, and that the delivery in this case was not to the sole proprietor of a drug-store, and therefore, whether done intentionally or not, that the carrier was guilty of a misdemeanor under the act of 1917, the reply is that the delivery was made upon a permit from the ordinary of the country, which, as already stated, was regular upon its face and purported to be in accordance with the requirements of section 3 of the act of 1917. In addition to what has been said, we think the act of 1917 must be construed in connection with §§ 426, 427, 428, 429, and 430 of the Penal Code of 1910. Section 2 of the act expressly provides that nothing therein contained "shall prohibit the use of pure alcohol for medicinal purposes as is prescribed" in the sections just referred to. § 430 is as follows: "Nothing in the preceding sections of this article shall be so construed as to prevent wholesale druggists from selling or furnishing alcohol in wholesale quantities to regular licensed retail druggists, or to public or charity hospitals, or to medical or pharmaceutical colleges. All wholesale druggists shall be required to keep a complete record of all their sales of alcohol, which record shall at all times be open for inspection to the regular authorities of such counties or cities in which such wholesale stores are located." It will be seen from reading this section, which the legislature in 1917 sought to preserve, that nothing should be so construed as to prevent druggists from selling or furnishing alcohol in wholesale quantities to regular licensed retail druggists, etc., and that section also provided that wholesale druggists should be required to keep a complete record of all their sales of alcohol, which should be open for inspection to the authorities of such counties or cities in which such wholesale stores were located. This was evidently done to protect the public, and in order that such sales under the authority of the law should not be

a license to wholesale and retail druggists to sell pure alcohol for any other purpose than those stated. The whole scheme of the prohibition law is obviously to prevent the possession, transportation, and sale of all alcoholic, spirituous, vinous, or malt liquors, etc., for beverage purposes; and not for the purpose of preventing pure alcohol from being transported and used for medicinal purposes. It would be an unreasonable construction to say that a wholesale druggist within the State of Georgia could have shipped to him pure alcohol from without the State, and yet he would be deprived of the right to supply such alcohol to a retail druggist within the State, who was to use it solely for medicinal purposes; and that he could not ship it, and no common carrier could transport it, from his place of business within this State to a retail druggist at some other point within this State. Carried to its logical result this line of reasoning would prevent a wholesale druggist in this State from supplying, or a common carrier from transporting and delivering, pure alcohol to a retail druggist across the street in the same town or city. Under this view the transporting or possession of such alcohol for the purpose specified in the act of 1917 would be illegal and subject the offender to the penalties provided. Surely the legislature never intended such construction, and it is the intention of the legislature that we are to ascertain.

*Judgment reversed. All the Justices concur.*